THE STATE OF KANSAS, *ex rel.*, v. JOHN A. MYERS *et al.*

No. 13,810. (80 Pac. 638.)

SYLLABUS BY THE COURT.

HIGHWAYS—*Reno County Act of 1901.* Section 2 of chapter 297, Laws of 1901, which authorizes the county commissioners of Reno county to build and construct such gradings, bridges and culverts as may be necessary to make a certain county road suitable for a highway, and authorizes and empowers them to appropriate therefor a sum not exceeding $1000 in addition to the amount now authorized by law, must be construed in connection with the general law relative to the building of bridges (Gen. Stat. 1901, ch. 16), and when so construed its provisions are found to be directory, and not mandatory.

Error from Reno district court; MATTHEW P. SIMPSON, judge. Opinion filed April 8, 1905. Affirmed.

*Carr W. Taylor, H. Whiteside,* and *J. U. Brown,* for plaintiff in error.

*Prigg & Williams,* for defendants in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: By chapter 297 of the Laws of 1901 the legislature declared a road along a given section-line therein named to be a county road. By section 2 of the act authority was conferred upon the county commissioners as follows:

"The board of county commissioners of Reno county are hereby authorized to build and construct such gradings, bridges and culverts as may be necessary to make and maintain such county road a suitable highway for the accommodation of the public; and to carry out the provisions of this act the said board of county commissioners of Reno county are hereby authorized and empowered to appropriate a sum not exceeding one thousand dollars in addition to the amount now authorized by law, or so much thereof as may be deemed necessary."

To make the given road available for general travel it was necessary to erect bridges thereon costing approximately the sum of $3000, and being so improved the road would be of general public utility.  This action was for the purpose of compelling the county commissioners of Reno county to erect such bridges and make such other improvements as would put the road into a usable condition—this upon the theory that the section above quoted made the doing of the things therein mentioned mandatory upon the commissioners, and not permissive and discretionary merely.  The district court took the contrary view, and the question is now here presented by the relator. He claims the law to be as stated by Nelson, C. J., in *The Mayor &c. of the City of New York v. Furze*, 3 Hill, 612, where it was said:

"Where a public body or officer is clothed by statute with power to do an act which concerns the public interest or the rights of third persons, the execution of the power may be insisted on as a duty, though the statute creating it be only permissive in its terms."

We think that this is a correct statement of the law in general, and, were there nothing to be taken into consideration outside of the act of 1901, determinative of the question at bar in favor of the plaintiff in error. By the terms of the quoted section, however, we are required to look to other provisions of the statute, as the amount which is thereby authorized to be expended can only be ascertained by such investigation. Nor do we find in the act cited any provision relating to the procedure which must be followed in making the required improvements.  Are the county commissioners to advertise for bids for the doing of the work in whole or in part, and let to the lowest bidder, or may they contract without such advertisement, or employ men by the day and furnish material?  In other words, is it not quite obvious from the incomplete and fragmentary character of this act—what it contains

as well as what it omits—that it was intended but as a part of the law which was to govern in the matter?

With this inquiry we turn to chapter 16 of the General Statutes of 1901, and find there a general law relating to the subject of bridges. By this general act discretion is committed to the county commissioners to determine what bridges shall be built at the expense of the county. It provides the rules to be observed in the construction of bridges, and directs that no bridge in counties as populous as Reno shall be constructed costing more than $2000 without submitting the question to the qualified voters of the county at a general election. We are persuaded that the special statute of 1901 must be construed in the light of the provisions of this general statute; and in that light the authorization contained in section 2 cannot be construed to be mandatory as to the matter of building the bridges and making the improvements, but rather extends the authority of the commissioners to expend the amount of $3000 instead of $2000 in this case without a vote of the people, leaving the discretion whether the improvement shall be undertaken at all with the board of county commissioners. (*The State v. Commissioners*, 31 Ohio St. 211.)

The general policy of our laws and theory of government is to commit these local matters to local determination; and while beyond question the legislature might peremptorily direct a board of county commissioners to erect a given bridge, still such general policy would lead us to resolve a given question in favor of local determination, in case a reasonable construction of the statute would permit us so to do. In this case we think the special statute was *in pari materia* with the general one, and, so viewed, does not take away the discretion reposed in the board of county commissioners found in the general statute.

The judgment of the lower court is affirmed.

All the Justices concurring.